We're going to move on to Buckner v. United States. Good morning, Mr. Chief Judge, and may it please the Court, Nicholas Dubey on behalf of the appellant Cecil Buckner. We're here today because Cecil Buckner's twice-sanctioned lawyer failed to object to the classification of a Hobbs Act robbery as a controlled substance offense. That's an obvious error. It was made even more harmful to him because he had agreed to an appeal waiver, which meant it was even more critical that these kinds of errors were looked at at the time of sentencing. Now, because of this classification, he was sentenced as a career offender, which increased his offense level by three points and thereby increased his guidelines range. Here's the problem I'm having. My problem is a prejudice problem. You have to show the reasonable probability, but for the counsel's error, that the result of the proceeding would have been different. You had 484 months of statutory mandatory minimum. I think 384, Your Honor. Yeah, 384, I'm sorry. 384. Yes. The bottom of the career offender guideline range was 535? It was 535 as the incorrect guidelines range. Right. That's the career offender range, which you say should not have applied. Yes, Your Honor. Right. I understand. I'm just . . . Yes.  What should have been the correct range would have been . . . as a result of the correct range, which would have been a 151 to 188, the district court only gave your client 30 months above the 384, so we get a total of 414, still well below what it would have been had you even considered the correct range. Absolutely, Your Honor. Most of that . . . I agree that that's how the sentencing math works. Right. I think this is really . . . we need to just turn to Melina Martinez. Yeah, but Melina Martinez recognizes that there can be a case where it's just plain from the record.  That the guideline just didn't drive the sentence. Yes, Your Honor. First of all, the baseline for Melina Martinez is very clear that absent unusual circumstances, which I'll address momentarily, but absent unusual circumstances, the defendant can satisfy the burden of prejudice merely by showing that there's an incorrect higher guidelines range. Melina Martinez also talks about, and it's quoting, I think it's Pew, but it's quoting really Freeman, that even where a court varies below, where the court is varying on the basis of an incorrectly higher guidelines range, it's fair to say that the erroneous guidelines range is the basis of that court's decision. It's not obvious to me that the district court was just not considering the guideline range at all. I recognize that the statutory mandatory amendments were going to produce 384, which is effectively a lifetime sentence and gave him only 30 months in addition to that. This seems to me just a totally clear case that the career offender guideline, which I'm assuming you're right, shouldn't have been a career offender guideline, but it just had nothing to do with it. Nor did the other, the correctly calculated guideline range. So Your Honor, I strongly disagree. But first of all, normally, again, where the record is silent, then again, so Mr. Buckner would have satisfied his prejudice. Let me just talk about those unusual circumstances from Melina Martinez and how they apply to this court's precedence. I'll sort of give you a sense of where I think those exceptional circumstances apply and why they don't apply here. So first of all, Melina Martinez discusses cases where the court explicitly says that regardless of the guidelines, it would have sentenced something here. This court has a precedent, United States v. Keene, that talks about a Keene statement where the court can actually say, regardless of how the guidelines are calculated, I would have picked this sentence for you. That can insulate, this court has described in later cases, that can insulate a sentence from a Melina Martinez presumption because it's clear that it didn't have an effect. In another kind of case, it's where the court has made clear that the issue that is prejudicial or the issue that was an error didn't actually affect the sentence. So there's a case, United States v. Thomas, cited by my friends, that talks about criminal history. And in the criminal history, it's talking about it was a three, and the court said, I think the three severely underrepresents the defendant's criminal history. I'm going to vary upward. And it turned out it should have been a two out of the guidelines. Well, the court made clear that three was underrepresentative, two would have been more so. But what it doesn't talk about is saying that just a variance on its own is sufficient to show that the court was ignoring the guidelines. And here, actually, in the record, we've got . . . Here are the things the district court says at the sentencing, right? The district court explained that it imposed a variant sentence because the aggregate sentence resulted in essentially a life sentence, which was greater than necessary to accomplish the statutory purposes of sentencing. The defendant spent almost the rest of his natural life in prison and put him into custody of the Bureau until he's a relatively old man. But it explained that your client was still due a severe sentence, is what it said, because he committed a violent crime, brandished a gun, used that gun to intimidate and enforce compliance. The message needs to be sent, you're going to go to prison for a long, long time. None of that has to do, though, with anything like career offender or even criminal history considerations. This is very focused on his actual crime and his individual circumstances. Your Honor, so I would really stress that you should look at the point where the court says that the sentence is 120 months below the bottom of the guidelines, give or take, and then all of those statements indicate what the final sentence actually is. But the way that the court got there was it took the guidelines range and subtracted 120 months. That got us to 415 and realized that if it's subtracted an extra one, rounding down in Mr. Buckner's favor, it got to the exact 34 and a half months. But the way that the court- By 21 months below, then. 121 months below, yes, but 414 months total, but it rounded in his favor. And again, it said 120 months based on the guidelines range. This court, and I think it was actually your Honor, in Corbett, talked about where it's tied to, it's tethered to an incorrect guidelines range, that that's sufficient to show there's a reasonable probability of a different outcome because, again, Melina Martinez talks about the guidelines are the lodestar, the guidelines are the place where the court starts and then moves down. In this case, Mr. Buckner's sentence was tied, the court said, I'm going to go 120 months below the bottom of the guidelines range, which was erroneously increased by 31 months, and then ruled and gave the sentence. So yes, it's true that the sentence, there's only about 30 months of free room, but- Yeah, and there was only 30 months added to the statutory mandatory minimum. So your take is that there would have been nothing added to that 384? No, your Honor, not at all. Any difference there is going to be prejudicial. And so we don't have to show that the court would have gone all the way to the bottom. All we need to show is it was tied to an erroneous guidelines range and the court, there's a reasonable probability that the court would have continued to go down. Again, I think the fact that the court rounded down in his favor is already indicative. But again, on a baseline neutral sentence or a neutral record, then that's sufficient under Molina-Martinez and Rosales-Morales. And so, I mean, this is the case, again, if you actually look at the dissent by Justice Thomas in Rosales-Morales, he talks about the fact that what these two cases have done is to mean that essentially the vast majority of, in that case, plain error cases, but the vast majority of these cases are going to get resentenced because it's establishing what is functionally a baseline presumption absent, again, every sentence is different. So I've had lots of these. And where, I mean, the vast majority of them we say, go back and do it over again. I've never had one that I can think of where it's so clear that the guideline calculation just wasn't driving the sentence. Again, Your Honor, I mean, the point of going 120 months shows where the court was starting and where the court ended up going. I think that that's the clear evidence that you need. I agree that, again, it's a substantial variance. In Corbett, again, in that case, Your Honor, that was more than a 50% variance down. So the amount of the variance here doesn't necessarily mean that it's not tied to the  Again, I would just stress the fact that where the court says, I'm starting at a wrong guidelines range and then moving down from there, it is inextricably linked to an incorrect range and where the court, I see my time is up, if I may just finish my sentence. Where the court starts with an incorrect range, it is prejudiced because the court is going to move from that range to a sentence and under a correct guidelines range, he would move from a correct range down to a new sentence. Okay, Mr. Dubé, thank you. Let's hear from Mr. Aycock. Good morning, Your Honors. Good morning. Good morning. May it please the court, John Aycock for the United States. The district court correctly denied Buckner's claim of ineffective assistance of counsel based on the record because he had failed to establish both deficient performance and practice. How is it not deficient to fail to object to a sentence guideline that is incorrect? I think when analyzing the claim of ineffective assistance of counsel, we need to look at the law at the time of the foregone objection and at the time, the career offender guideline had just recently been amended. The Hobbs Act issue wasn't the only one. I thought he was also credited for a controlled substance offense, which was not what he was indicted for. That's correct. In fact, the PSR did misclassify the Hobbs Act robbery as a controlled substance offense, but that misclassification did not affect whether or not the career offender guideline would have applied. Whether or not the paragraph in the PSR identified Hobbs Act robbery as a crime of violence or a controlled substance offense, again, did not affect whether there were sufficient predicates and whether the offenses of conviction supported that. Let's say you lose on deficiency. What about prejudice? I'm trying to do the math because when I read the record, the same area that the chief cited, it does seem that the reference to Congress indicates the guidelines. The court says, I don't have much discretion, quite honestly, which suggests his hands are tied by the guidelines. We know that the court departed a significant amount, which means if he started with the right guidelines with no keen statement in the record, we really don't know what the correct result would have been. How is that not prejudicial? As the Supreme Court made clear in Molina-Martinez and this court in Griffith, a detailed explanation by the district court for its chosen sentence that's independent of the guidelines range can refute a showing of prejudice. At the end of the day, Buckner is not entitled to relief unless . . . Did the district court feel that its hands were tied by the guidelines or by the statutory mandatory minimums that produced 384 months? The district court was pretty clear about this. It said that it didn't have much discretion in the range given the fact that the statutory mandatory minimums already got the sentence up to 384 months. The court noted its lack of discretion there. Lack of discretion was produced by that, by the statutory mandatory minimum, not by the guidelines, right? That's right, Your Honor. In fact, the district court . . . This is a post-Booker sentence. The district court understood it could vary from the guidelines, right? That's right, Your Honor. The district court did vary from the guidelines. In fact, the district court only referenced the guidelines range once. That was in noting the extent of the variance. That was after the district court had already imposed the sentence. The idea that the district court anchored or tethered its sentence to the bottom of the guidelines is simply not supported by the record. The district court never stated . . . That's because so much of this was tied by statutory mandatory minimums anyway. We've got 384. That's the real floor here. That's right, Your Honor. All the district court added to that was 30. That's right. Buckner essentially received a 30-month sentence for two Hobbs Act robberies and the conspiracy to commit Hobbs Act robbery, which reflected a downward variance of about 75, 80 percent. Just to go over the numbers, the 414-month total term was 121 months below the calculated guidelines range and 90 months below the corrected guidelines range, which is a huge variance. As this court explained in Corvette, a sentence that's well below any possible guidelines range is a powerful indicator that a guidelines error did not affect the sentence, and that's the case here. Rather than . . . That's right, Your Honor, and this court noted the possibility that there would be exceptional cases in Griffith and in Corvette, for example. Rather than anchor its sentence to the bottom of the guidelines, the court, in its own words, did the math. It determined that the 414-month total term was warranted, given the proportionality of that sentence to Mr. Buckner's life expectancy, while still being mindful of the serious and violent nature of the offenses, and in fact, that's what the district court begins with when it imposes a sentence. It notes the terror that was inflicted on the victims of the robberies, so it's engaging in its own calculations, independent of the guidelines. It's rejecting the United States' request for a guidelines sentence, and it's essentially agreeing with defense counsel that what was effectively a life sentence was unwarranted. Never once did the court say, I want to sentence you 120 months below the guidelines range, or halfway between the probation officer's recommendation and the guidelines range, none of that. Let me ask you, so the 2255 motion was heard by the same district judge who sentenced him? That's correct, Your Honor. Never once, also, did the district court mention the career offender guideline in imposing sentence. The court never stated, well, this is a serious enhancement, and I'm taking your . . . This is Judge Dalton, the same judge we just had in the last appeal, right? That's correct, Your Honor, that's correct. We relied on Thomas in our brief, and that's where this court found no effect on substantial rights given the extent of an upward variance, and I think that's useful for a few reasons. First of all, Thomas applied the language from Corbett, and it did what it's supposed to do under Molina-Martinez. It took a close, holistic look at the circumstances of the case, at the sentencing record, and finding no effect on substantial rights, which is essentially the same standard as prejudice in the Strickland context. And the district court there had its own independent reasons, independent of the guidelines for imposing sentence, and the extent of the variance there was much less than the variance here. And this court was able to make that determination on direct appeal. It's not like additional evidence is required to make this sort of determination. Rather, it simply takes a close, holistic look at the record, which this court does all the time. Briefly, as to Keene, the absence of a Keene finding, while it may be relevant under Molina-Martinez, is not dispositive here. There's nothing in Molina-Martinez, in Griffith, Corbett, or Thomas, suggesting that a Keene statement is necessary to find that a showing of prejudice can be refuted. And as a practical reason, there was probably no Keene finding here, because there was no objection to the career offender guideline. So the absence of such a finding . . . Wait a minute. That means that there's no Keene because counsel was deficient, essentially, is what you're  Not necessarily that because counsel was deficient, but simply that explains why the district court might not have felt it necessary to make such a statement. If there are no further questions on prejudice, I can turn to the deficient performance issue. It would have been reasonable for counsel not to object to the career offender guideline, as we discussed, given the law at the time. At the time of Buckner's sentencing in 2016, the guideline had just been amended, and there was no indication from the record or reason for the amendment, 798, that the sentencing commission sought to exclude Hobbs Act robbery as a crime of violence. As this court explained in Eason, Hobbs Act robbery had historically qualified as a crime of violence, and although the amendment to the career offender guideline removed the residual clause, the guideline continued to define a crime of violence by reference to both the elements clause, so use or threat of force against a person, and the enumerated offenses clause, which specifically included both robbery and extortion. And at the same time, this court had already held that Hobbs Act robbery was not a crime of violence under the similarly worded elements clause in section 924C. Unlike some of the cases that Buckner relies on, he cites no contemporaneous cases from this court, strongly suggesting or foreshadowing this court's decision three years later in Eason, and there's a strong line of precedent that counsel is not ineffective in failing to anticipate a change in the law. But looking at some of those cases is instructive. In O'Connor, for example, the Tenth Circuit found this question or this issue so close that it resorted to the rule of lenity, and the reason why, because extortion, as defined by the guidelines, could reasonably encompass a threat to property. And in Bridges, the Seventh Circuit, in addressing an ineffective assistance of counsel claim, found it significant that at the time of the sentencing of that case, O'Connor, and cases relying on O'Connor, had already been decided. That's not true for Mr. Buckner. His sentencing was well before those cases, so counsel can't be faulted for not finding them. And consider also the litigation in the district court. For example, the three defendants in Eason raised the same issue before three different district judges. Each one was unsuccessful. And if you look at the sentencing transcripts, you'll see that the district courts are struggling with this question, especially given the existing law in the 924C context. And we provided several cases where attorneys did not raise this issue. Ultimately, the question is whether counsel did as no competent counsel would have done. And the allegations were insufficient to establish that, and insufficient to establish prejudice. If there's nothing else, this court should affirm the judgment of the district court. Thank you. Thank you, Mr. Aikau. Mr. Pearson? Thank you, Your Honor. Counselor, overall, it does seem like the math is not in your client's favor. And so I'm trying to understand, are you moving us into a per se rule where failure to object, which constitutes deficient performance, when the sentence might have been different, automatically requires a reversal and remand? Your Honor, I'm not advocating for a new per se rule. I think that rule actually exists already. Under . . . So you view Marlena Martinez as effectively giving us a per se rule? That's what you're saying? If the question is about whether the below guideline sentence that Mr. Buckner received is itself evidence that he was not prejudiced. What I'm saying is that . . . It's not just that. It's everything that the district court says in that sentencing hearing, right? I mean, Marlena Martinez says, if the district court gives a detailed explanation, we have to look at it, right? Of course. And the district court did give a detailed information. Yeah, he did. Explanation of his reasons for sentencing Mr. Buckner. But the beginning of its analysis is also the sentencing guideline. My friend over here said that the district court did the math as though that is evidence of an independent evaluation separate from the guidelines. But the district court did the math. The starting point for the math is the guideline, 535 months to 535 months. The starting point of the math in this case was 384 months of statutory mandatory minimums, right? That's correct, your honor. And all he got was 30 months above that. That's correct, your honor. But all Mr. Buckner needs to show in order to show prejudice is that he might stand to receive even one day of jail time. And what would his sentence have been if the correct guideline range had been applied? Your honor, we obviously . . . What would have been under the guideline range? Your honor, if he . . . 384 plus what? Well, the correct guidelines range would have been 504 months to 534 months. So 90 months more than what he got? 90, yes. Correct, your honor. But if . . . And Judge Dalton, who was the sentencing judge, who judged this motion to vacate, said not only did he not think that counsel's failure to anticipate the change in the legal landscape was deficient performance, but even if it were, there was no prejudice. A district judge who actually sentenced him looks at this and says, it didn't make a difference. Your honor, respectfully, the district court, when it issued that ruling, was not saying that it would give Mr. Buckner the same sentence on resentencing. It was saying there was no prejudice because at the time, Eason had not yet been decided. And that Hobbs Act robbery . . . That's why there was no deficient performance. Your honor, respectfully . . . The district court said as an alternative matter, it didn't make a difference. Well, your honor, the district court ruled that there would be no deficient performance and no difference in outcome because of the crime of violence issue. Nowhere in its ruling did the district court say that it would give Mr. Buckner the same sentence if the opportunity was provided. As a result . . . That's not the inquiry. The district court shouldn't have addressed that. Correct. But the district court was looking back at his own decision, right, to decide whether the guideline drove the 414 months or not. I mean, he had to look back at his own sentencing transcript to make that prejudice inquiry, didn't he? Perhaps, your honor. But what the district court found, and this is on page eight of the district court's ruling, is that Mr. Buckner has not shown prejudice because even if counsel had objected to the obvious controlled substance error and to the counterfactual scenario where Hobbs Act robbery was classified as a crime of violence, he would have been overruled given that petitioner qualified for treatment as a career offender under 4B1.1. Therefore, the district court was finding that at the time of the sentencing, Mr. Buckner qualified as a career offender. And we disagree with that for a number of reasons. Because one, he could not have been a career offender because of a controlled substance offense. Everyone here agrees, I think, the government agrees, and I think the court agrees, that is an obvious and egregious error in Mr. Buckner's PSR. But in the alternative universe where that error was corrected, Hobbs Act robbery also is not a crime of violence. Now, granted, Eason came down in 2020. However, Eason found expressly that since time one, when the guidelines were amended in August of 2016, as a matter of law, Hobbs Act robbery could not be a crime of violence because it applies to threats against persons and property. And the guidelines only- Totally agree with that. Okay. And so, respectfully, if the district court is saying that no matter what, it would have overruled the objection at a time, we think that is irrelevant under Strickland, which must be an objective inquiry. And two, it's speculative because the district court, I don't think sitting here 10 years after the fact, can say that no matter what argument it was presented with on the crime of violence issue, it would have rejected. And I see I'm out of time, Your Honor. If I could just finish one more point regarding prejudice. If this court finds, cannot rule out the possibility that Mr. Buckner would receive 404 months, 406 months, 410 months, or 413 months and 15 days on a resentencing, then Mr. Buckner has established prejudice under Melina Martinez and Strickland. Thank you. Thank you. We're going to move to our third-